IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Annie A. Brewster,              )<br>                                          )<br>                        Plaintiff, )<br>                                          )<br>        vs.                             )<br>                                          )<br>Jo Anne B. Barnhart,          )<br>Commissioner of Social Security, )<br>                                          )<br>                        Defendant. )<br>_____) | Civil Action No. 6:04-22174-HMH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On May 28, 2002, the plaintiff filed an application for DIB alleging disability beginning May 1, 2000. The application was denied initially and on reconsideration. On April 7, 2003, the plaintiff requested a hearing, which was held on February 26, 2004. Following the hearing, at which the plaintiff, her attorney and a vocational expert appeared,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

the administrative law judge considered the case *de novo*, and on June 17, 2004, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on August 6, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1) The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3) The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
>
> (4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5) The undersigned finds the claimant's allegations regarding her limitations are not totally credible in light of the evidence of record when considered in its entirety.
>
> (6) The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
>
> (7) The claimant has the following residual functional capacity: lift up to ten pounds, sit up to six hours in an eight-hour workday, and stand/walk up to two hours in an eight-hour work day. The claimant can occasionally stoop and crouch, but she cannot kneel, crawl, or balance. The claimant can occasionally climb ramps/stairs, but she cannot climb ladders, ropes, or scaffolds.
>
> (8) The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

>  (9) The claimant is an "individual closely approaching advanced age" (20 CFR § 404.1563).
>
>  (10) The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).
>
>  (11) The claimant has transferable skills from skilled work previously performed as described in the body of the decision (20 CFR § 404.1568).
>
>  (12) The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).
>
>  (13) Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.15 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a file clerk, circulation control worker, information desk attendant, and customer service representative.
>
>  (14) The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389

4

(1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### **EVIDENCE PRESENTED**

The record reveals that the plaintiff was 53 years old at the time of the ALJ's decision.  She has worked as a print shop worker preparing plate art film.  She alleges disability as of May 1, 2000, due to arthritis in her low back, legs and feet.

In February 1990, Dr. Clark D. Moore examined the plaintiff for an impairment rating related to injuries she sustained in a motor vehicle accident, and found she had a residual cervical and lumbar strain as a result of an automobile accident and compounded by pre-existing morbid obesity.  He indicated that the plaintiff had a 5% impairment rating of the spine (Tr. 130).

A clinic note dated October 31, 2000, from Dr. Rosa M. Jimenez, the plaintiff's treating physician, stated that the plaintiff had a history of gastroesophageal reflux, status

post abdominal hysterectomy, borderline hypertension, and obesity. The plaintiff reported she had experienced a worsening of her gastroesophageal reflux and was easily fatigued. She also stated that she had early morning stiffness in her knees, ankles, and hands, but was unable to take any medication because of her dyspeptic symptoms. Dr. Jimenez noted the plaintiff had gained 10 pounds since February and weighed 310 pounds. Her extremities showed no pitting edema, clubbing or cyanosis, and there was no evidence of neuropathy with decreased sensation or deformity in any of her joints. Dr. Jimenez prescribed medications for her gastroesophageal reflux and arthritis and recommended a diet. She noted that the plaintiff's laboratory testing was normal except for elevated glucose levels (Tr. 160-62).

When the plaintiff returned to Dr. Jimenez for follow-up on November 30, 2000, she was having "absolutely no problems with arthritic-type changes since she started the Celebrex and complete resolution of her gastroesophageal reflux with Prevacid." Her weight was down two pounds, and her blood sugar was normal. Dr. Jimenez advised her to continue her diet and medications (Tr. 158).

On January 11, 2001, Dr. Jimenez noted that the plaintiff had lost 15 pounds since her previous visit and her blood sugar was normal. Dr. Jimenez advised the plaintiff to continue her diet and medications (Tr. 157).

In March 2001, the plaintiff's weight was back up to 316 pounds and she reported she had gone off her diet. She also indicated that she had been unable to afford her Prevacid, which made her unable to take Celebrex for her arthritis. Dr. Jimenez strongly recommended the plaintiff return to her diet and continue her anti-reflux measures (Tr. 155).

Treatment notes from Dr. Jimenez dated January 8, 2002, stated that the plaintiff had stopped taking her medications because she was having financial problems secondary to having custody of her daughter's children. Dr. Jimenez noted that the plaintiff

took care of her grandchildren and a daughter. The plaintiff reported that she had increased pain and discomfort in the inner plantar aspect of her right heel area and on her left knee since she fell about two months previously. On examination, the plaintiff's weight was down to 294 pounds. She had no synovial inflammation or any significant evidence of instability of her knees. There was no evidence of neuropathy or gait problems other than that her gait was slow secondary to her weight. Dr. Jimenez planned to provide the plaintiff with as many medication samples as she could (Tr. 146-48).

On April 19, 2002, Dr. Jimenez noted that the plaintiff's blood sugars were improved. She emphasized to the plaintiff the importance of her diet (Tr. 140).

On August 14, 2002, Dr. Einer W. Anderson, examined the plaintiff in connection with her application for benefits. The plaintiff reported she had low back pain which resulted in difficulty with simple household tasks such as sweeping. She also noted that she had numbness in both toes as well as problems with her left knee giving out, and she could walk only 100 feet and climb only one flight of stairs. The plaintiff indicated that she did a small amount of housework, occasionally shopped, and cared for a three-year-old grandson. The plaintiff denied any psychiatric or mental health symptoms. She noted that she last worked in April 1999, and she stopped working because she was laid off (Tr. 133-34).

Dr. Anderson's examination revealed that the plaintiff was 65 inches tall and weighed 300 pounds. She had marked difficulty getting on and off the examining table, particularly sitting up from the lying position. She was tender over the lumbosacral spine and could not touch her toes when bent over. Her cervical spine and upper extremities were normal with normal range of motion, grip strength, and fine motion of both hands. She had bony swelling of both knees, but normal range of motion, no muscle atrophy or wasting, no motor or sensory deficits, normal deep tendon reflexes, and a normal gait. The plaintiff seemed of average intelligence and a mini-mental status examination was normal. An x-ray

7

of the plaintiff's left knee revealed decreased joint space, and an x-ray of her spine showed minimal degenerative joint disease of the cervical spine, and decreased disc space at L5-S1 with evidence of degenerative joint disease. Dr. Anderson diagnosed morbid obesity, non-insulin dependent diabetes mellitus, and degenerative joint disease (Tr. 134-35).

On August 22, 2002, a State agency physician examined the plaintiff's medical record and determined that she retained the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand, and/or walk about six hours in an eight-hour work day; and occasionally climb, balance, stoop, knee., crouch, and crawl (Tr. 199-206),

In March 2003, Dr. Charles C. Jones, a State agency physician, reviewed the plaintiff's record and found that she could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk about six hours in an eight-hour work day; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and frequently handle with her left upper extremity (Tr. 169-176).

On August 13, 2003, the plaintiff returned to Dr. Jimenez complaining of some depressive changes, increasing pain and discomfort in her back, and swelling in her lower extremities. The plaintiff was not checking her blood sugars everyday, and she was taking less than her prescribed dosage of Glucophage because of the cost. She also complained of polyuria, muscle spasms, and poor concentration. Dr. Jiminez noted the polyuria was due to the fact that the plaintiff's sugars usually ran in the 350 to 400 range. On examination, the plaintiff weighed 285 pounds. She had good peripheral pulses in her lower extremities, with no pitting edema. Dr. Jimenez noted there was neuropathy, but no involuntary movements. Dr. Jimenez advised the plaintiff that she needed to lose weight and comply with her medication. She recommended back exercises and changed the plaintiff's arthritis medication. Dr. Jimenez expressed frustration in providing adequate

treatment for the plaintiff due to her economic situation and the fact that she had not been able to lose weight by dietary measures alone (Tr. 226-27).

A clinic note dated August 25, 2003, stated that, on examination, the plaintiff had no evidence of malformation in any of her joints or acute inflammatory changes and no effusion or crepitus. She had a slow and antalgic gait due to her weight and back discomfort (Tr. 224). Dr. Jimenez completed a questionnaire at the request of the plaintiff's attorney in preparation for her disability hearing. Dr. Jimenez stated the plaintiff had chronic medical problems stemming from adult onset diabetes, obesity, degenerative arthritis, hypertension, and hyperlipidemia. Dr. Jimenez indicated that the plaintiff could sit only three to four hours in an eight-hour work day; could stand and/or walk no more than one hour in an eight-hour work day; could lift and carry up to 10 pounds occasionally; had limitations in her ability to perform repetitive reaching, handling, fingering, or lifting; and needed to get up and walk around every 30-45 minutes. She noted that the plaintiff had marked limitations in her ability to lift overhead and moderate limitations in her ability to use her hands for holding and fine manipulation. Dr. Jimenez indicated the plaintiff would need to take unscheduled breaks frequently during the day, and needed ready access to a restroom. She further noted that the plaintiff's condition was exacerbated by not being able to afford her medications and that her arthritic complaints were all subjective in nature (Tr. 207-15).

When the plaintiff returned to Dr. Jimenez on December 4, 2003, her blood sugar was under better control, but she was having numbness in her fingertips and toes. Examination revealed no ataxic kind of changes, involuntary movements, or tremors. She had no pitting edema, ulcerations, ingrown toenails, or other abnormalities in the lower extremities. Dr. Jimenez advised her to go back on her diet and increased her hypertension medication. Dr. Jimenez thought she had plantar fascitis and recommended bilateral shoe implants and foot exercises (Tr. 220-22).

On January 22, 2004, the plaintiff reported she had experienced an increase in her lower extremity pain. She stated that she had been "taking care of people in her house all day" since her mother-in-law had recently passed away. Dr. Jimenez diagnosed an impingement sciatica type pain. She prescribed Darvocet and recommended heat and rest. Dr. Jimenez also remarked that she was considering referring the plaintiff for an orthopedic evaluation (Tr. 218).

On February 5, 2004, Dr. Jimenez noted that an x-ray of the plaintiff's foot revealed osteoarthritic changes, as well as a plantar heel spur. Dr. Jimenez diagnosed an acute gouty attack and prescribed medication and dietary changes (Tr. 216).

At the hearing held on February 26, 2004, the plaintiff testified she was 5'6" and weighed 260 pounds (Tr. 256). She stated that she had custody of her four-year-old grandson and had cared for him since he was born in June 1999 (Tr. 257). The plaintiff testified that her past work involved working for various printing companies in the art department or prep department (Tr. 257-58). She indicated that she was laid off from her job in April 1999 (Tr. 259). The plaintiff testified that she had chronic foot pain, diabetes, vision problems, and poor energy (Tr. 261-63). She reported that she had to stay off her feet and keep them elevated for 2-3 hours in the morning and afternoon (Tr. 262).

The ALJ also received testimony from Joel Leonard, a vocational expert (VE). Mr. Leonard stated the plaintiff's past work in different jobs associated with printing and publishing was light skilled work, and that she had acquired the skills of giving and receiving information to and from employees, knowledge of printing and publishing techniques, and prep work. Mr. Leonard testified that an individual of the plaintiff's age, with the plaintiff's education, work history, and transferable skills, and restricted to sedentary work with occasional stooping, crouching, and climbing ramps and stairs, and no kneeling, crawling, balancing or climbing ladders, ropes, or scaffolds would be able to perform the sedentary

semi-skilled jobs of art room file clerk, circulation control clerk, information desk attendant, and customer service representative (Tr. 270-87).

## ANALYSIS

The plaintiff alleges disability commencing May 1, 2000, due to arthritis in her lower back, legs, and feet (Tr. 78). The ALJ found that the plaintiff could perform a significant range of sedentary work and, based upon the testimony of the vocational expert, he determined that there were a significant number of jobs in the national economy that the plaintiff could perform. He cited the jobs of file clerk, circulation control worker, information desk attendant, and customer service representative as examples of such jobs (Tr. 21-22). The plaintiff alleges that the ALJ erred by (1) failing to give adequate weight to the opinion and assessment of her treating physician, Dr. Rosa Jiminez; (2) failing to properly consider her subjective complaints; and (3) finding she had transferable skills to other jobs even though the skills were from work she could no longer perform.

***Treating Physician***

The plaintiff first argues that the ALJ did not properly evaluate the opinion of her treating physician, Dr. Jiminez. The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p, 1996 WL 374188, * 5. Furthermore, even if the plaintiff can produce conflicting evidence which might have

resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, *4.

As noted above, Dr. Jiminez opined that the plaintiff could sit only three to four hours in an eight-hour work day; could stand and/or walk no more than one hour in an eight-hour work day; could lift and carry up to 10 pounds occasionally; had limitations in her ability to perform repetitive reaching, handling, fingering, or lifting; and needed to get up and walk around every 30-45 minutes. She noted that the plaintiff had marked limitations in her ability to lift overhead and moderate limitations in her ability to use her hands for holding

12

and fine manipulation. Dr. Jimenez indicated the plaintiff would need to take unscheduled breaks frequently during the day, and needed ready access to a restroom. She further noted that the plaintiff's condition was exacerbated by not being able to afford her medications and that her arthritic complaints were all subjective in nature (Tr. 207-15). The ALJ determined that Dr. Jiminez' opinion was "based primarily on the claimant's multiple subjective complaints, which simply are not corroborated by the clinical and objective findings, and it is inconsistent with the results of Dr. Jiminez' own clinical findings and objective tests" (Tr. 17). Thus, the ALJ afforded Dr. Jiminez' opinion "no controlling weight" (Tr. 17).

As argued by the plaintiff, even if the ALJ elected not to afford Dr. Jimenez' opinion controlling weight, he was obligated to still weigh the value of the opinion in view of the factors cited above. *See* 20 C.F.R. §404.1527(d)(2)-(5). The plaintiff argues that the ALJ reviewed the record only for items that arguably contradicted Dr. Jiminez' opinion, including the fact that she cares for her grandson (pet. brief. 9). Dr. Jiminez is an internal medicine specialist who, at the time of her opinion, had treated the plaintiff every three to four months for over six years. X-rays showed evidence of degenerative joint disease, and elevated glucose levels, vision problems, and neuropathy have all been noted by Dr. Jiminez in her examinations of the plaintiff. Further, Dr. Anderson, who performed a consultative examination of the plaintiff, noted the plaintiff's morbid obesity, Type II diabetes, and evidence of degenerative joint disease of the cervical and lumbosacral spine. As argued by the plaintiff, the ALJ disregarded the opinion of Dr. Jiminez without properly considering the appropriate weight, if any, to give her opinion (pl. brief 7-10). Based upon the foregoing, a remand is necessary for a proper evaluation of the treating physician's opinion.

***Subjective Complaints***

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7 states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p.

The ALJ found that the plaintiff's testimony concerning the severity of her symptoms was not fully credible. Specifically, he stated:

> Despite the claimant's contention that she is disabled due to her impairments, the documentary evidence from treating physicians, non-treating physicians, and consultative examiners establishes that the claimant is capable of some types of work. The claimant has had pain with certain motions in her back and degenerative changes on diagnostic studies, however, her motor strength are 5/5 and her sensory examination is intact. Additionally, as indicated below, the claimant told Dr. Anderson, a consultative examiner, that she takes care of her grandson. It appears from the evidence of record that with the use of medication, the claimant experiences little effect or limitation in every day life. . . .
>
> The undersigned finds that the testimony of the claimant is not fully credible concerning her symptoms and the extent of her limitations. The [claimant] told Dr. Anderson, the consultative examiner[,] that she takes care of her grandson, which contradicts her testimony that a neighbor takes care of him. The undersigned finds that neither the severity of her impairments nor the extent of her limitations is supported by the objective medical evidence of record.

(Tr. 17-18).

As set forth above, in finding the plaintiff had "little effect or limitation in every day life" and that her complaints were not "fully credible," the ALJ relied heavily on the fact that the plaintiff has custody of her grandson (Tr. 17-18). The plaintiff and her husband have had custody of their grandson since he was born (Tr. 257). The plaintiff testified at the hearing that her five-year-old grandson went to a special needs class at school, and a neighbor helped her with him on a daily basis. She further testified that the child's father also helped and that "most of the time if [she's] home [she has] somebody there with [her]" (Tr. 269-70). The ALJ found this testimony to be contradictory (Tr. 18) to the plaintiff's statement to Dr. Anderson that "she cares for a . . . grandson in their home" (Tr. 134). The court fails to see how these statements are contradictory given that the plaintiff has custody of the grandson and, even if she does have daily help, she does "care for a grandson in her home." Clearly, a claimant is not required to be bedridden or completely helpless in order to be found to be disabled. *Totten v. Califano*, 624 F.2d 10, 11-12 (4th Cir. 1980). The plaintiff's limited daily activities simply do not contradict her allegations of severe and disabling pain, and the ALJ's reliance on this statement in finding her allegations not fully credible was in error. Accordingly, upon remand, the ALJ should properly consider the plaintiff's subjective complaints.

***Transferable Skills***

Lastly, the plaintiff argues that the ALJ erred in finding that she had transferable skills to other jobs, because the skills were from work that she could no longer perform (pl. brief 3-6). The ALJ found that the plaintiff was unable to perform her past relevant work as a print shop worker. At the hearing, the vocational expert testified that the plaintiff had the following transferable skills: knowledge of printing and preparatory work and information giving, receiving, and evaluating, which would transfer to the sedentary jobs of art room file clerk, circulation control clerk, information desk attendant, and customer

15

service representative (Tr. 275, 279-80). Based upon this testimony, the ALJ found that there were a significant number of jobs in the national economy that the plaintiff could perform. The plaintiff contends that it was error for the ALJ "to conclude that [the plaintiff] had transferable skills that would assist her in making a vocational adjustment to other jobs based upon skills from the printing and publishing work that all conceded she could no longer perform" (pl. brief 3). This court disagrees.

The regulations promulgated by the Commissioner explain what is meant by "transferable skills":

> d) Skills that can be used in other work (transferability).
>
> (1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
>
> (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which--
>
> (I) The same or a lesser degree of skill is required;
>
> (ii) The same or similar tools and machines are used; and
>
> (iii) The same or similar raw materials, products, processes, or services are involved.
>
> (3) Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

20 C.F.R. § 404.1568(d)(1)-(3). As argued by the defendant, for the purpose of determining what acquired skills an individual could use to perform other kinds of work, it is irrelevant that the individual can no longer perform the jobs from which the skills came. Accordingly, the ALJ did not err in this regard.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe<br>
United States Magistrate Judge

December 19, 2005

Greenville, South Carolina

17